IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CYNTHIA PROITE | : | |
| | : | |
| v. | : | NO. 22-CV-4575 |
| | : | |
| OTIS WORLDWIDE CORP., et al. | : | |

**O P I N I O N**

SCOTT W. REID                                                                                               DATE:  December 5, 2024
UNITED STATES MAGISTRATE JUDGE

      Plaintiff, Cynthia Proite, brought this negligence action against Otis Worldwide Corporation and Otis Elevator Company, (collectively "Otis"), and John Doe entities, to recover for injuries she sustained while pulling a heavy cart of medical supplies out of an elevator maintained by Otis, which came to a stop with the elevator floor misaligned with the building floor.  The Otis defendants have now filed a motion for summary judgment against Proite.  As explained below, their motion will be denied.

I.     *Factual Background*

      Because this is a denial of summary judgment, it is not necessary to provide an extensive recital of the facts of this case.  It is sufficient to relate that Proite is employed as a nurse at Pottstown Hospital.  *Complaint* at ¶1.  Otis was at the relevant time a party to a contract with Pottstown Hospital by which it maintained the hospital elevators.  *Maintenance Contract*, attached to Motion for Summary Judgment (the "Motion") as Exhibit D.

      On December 10, 2020, Proite was transporting a 3-tier cart of medical supplies in the elevator located in the outpatient cancer treatment building of Pottstown Hospital.  *Complaint* at ¶1; *Deposition of Michael V. Farinola*, attached to Motion for Summary Judgment as Exhibit C,

at 71:3-77:22.  When the elevator doors opened, the elevator floor was significantly lower than the building floor, so Proite could not pull the cart smoothly out of the elevator onto a flat surface.  Instead, the cart became stuck, and she yanked the cart to pull it out of the elevator.  *Complaint* at ¶ 15.  According to Proite, this caused her injuries including back pain, bilateral leg pain, and a fractured toe.  *Complaint* at ¶ 17.  She also claims emotional and economic damages.  *Id*. at ¶¶ 19-21.

Counsel for Proite deposed Otis corporate representative Xavier Rivera.  He testified that, with respect to hydraulic elevators such as the one involved in Proite's accident, the recommended frequency of preventive maintenance by Otis would be "three visits per year."  *Deposition of Xavier Rivera*, attached to Response as Exhibit C, at 77:25-78:2.  Rivera was less certain when asked whether he agreed with the statement:  "a properly serviced and maintained elevator should not mislevel."  *Id*. at 50:18-22.  He responded:  "No. I don't disagree with that statement," but immediately added:  "I just said it's less likely for it to happen, but it can still happen."  *Id*. at 50:24-51:2.

Proite also obtained a report from Michael V. Farinola, a consultant in elevator systems and elevator codes.  *Michael V. Farinola Letter of July 23, 2024*, attached to Motion as Exhibit F.  At the end of his report, Farinola summarized his conclusions:

> Based on my review of the documents referenced above, my inspection of the elevator, and my review of aforementioned documents, it is my professional opinion expressed with a reasonable degree of professional certainty, that Otis was negligent and breached their contractual obligation by failing to maintain the minimum ADA and AMSE Elevator Safety Code requirement of ½" leveling by not proactively checking and adjusting the leveling valves and anti-creep device for proper operation.  It should be noted that anti-creep activates when an elevator is in an unsafe and code deficient condition, it does not correct the root cause of the mis-leveling[.] Otis had a duty to warn the hospital of a prior leveling problem and take immediate preventative measures to correct the cause of the mis-leveling.  Additionally, Otis' frequency of visits were not at the minimum of quarterly for a hospital environment and had they been more proactive on their frequency of maintenance it may have prevented the injury to Ms. Proite, who

2

unsuspectingly and unwittingly fell from the mis-leveling trap created by Otis's inattentive, unreasonably infrequent service of the incident elevator, which, by Otis's own admission, should not mislevel under normal preventative maintenance contracted by Otis to the hospital.

*Id*. at p. 13.

Farinola did not, however, identify the mechanism or the exact failure which caused the elevator to mislevel. It could also be noted that the contract between Otis and Pottstown Hospital did not specify a required number of yearly inspections. *Contract*, attached to Motion as Exhibit D. However, the parties agree that Otis serviced the elevator for routine maintenance twice in the year prior to Proite's accident. *Proite's Response to Motion*, at 4.

II.     *Relevant Legal Principles*

   A.     *Summary Judgment*

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must present more than mere bare assertions, conclusory allegations, or suspicions to show the existence of a genuine issue. *Jutrowski Township of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). It is not sufficient to reassert factually unsupported allegations contained in the pleadings. *Anderson v. Liberty Lobby*, 466 U.S. 242, 249 (1986)*; Celotex*, *supra*, at 325.

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. *Anderson v. Liberty Lobby*, *supra* at 255; *Tiggs Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to

3

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, *supra*, at 323.

      B.     *The Pennsylvania Law on Negligence Generally and in Elevator Cases*

The Pennsylvania Supreme Court has explained that "the mere happening of an accident or an injury does not establish negligence nor raise an inference or a presumption of negligence nor make out a *prima facie* case of negligence." *Amon v. Shemaka*, 214 A.2d 238, 239 (Pa. 1965). Instead, to make out a claim for negligence under Pennsylvania law, a plaintiff must establish (1) a duty of care; (2) breach of the duty of care; (3) the plaintiff suffered actual harm; and (4) a causal relationship existed between the breach of duty and the harm. *Adams v. Wells Fargo Bank, N.A.*, Civ. A. No. 16-0907, 2017 WL 6619015 at *2 (E.D. Pa. Dec. 27, 2017).

More specifically, a defendant contractor may be liable to a user of an elevator where (1) the defendant undertook to inspect the elevator at regular intervals; (2) the elevator was in a defective or dangerous condition at the time of the plaintiff's injury; and (3) such defective or dangerous condition was discoverable by reasonable inspection. *Pyle v. Otis Elevator Co.*, Civ. A. No. 19-4283, 2020 WL 3265163 at *8 (E.D. Pa. June 17, 2020), *aff'd at* 855 F. App'x 107 (3d Cir. 2021); *Colon v. Ashford Bucks County, LLC*, Civ. A. No. 11-1464, 2012 WL 5400062 at *2 (E.D. Pa. Nov. 6, 2012); *Evans v. Otis Elevator Company*, 168 A.2d 573 576 (Pa. 1961).

III.    *Discussion*

Otis argues that Proite cannot show that it acted negligently. It argues that there is no evidence that the elevator was in a defective or dangerous condition which was "discoverable by reasonable inspection," as required under Pennsylvania law, as set forth in *Evans* and *Pyle*.

Otis points out that Proite's expert, Michael Farinola, admitted at his deposition that there was (a) no evidence that Pottstown Hospital ever contacted Otis to report misleveling; (b) no evidence that the two state inspections which took place in the same year revealed misleveling; and (c) no evidence that either of Otis's routine service calls in the year prior to Proite's accident revealed misleveling. *Deposition of Michael Farinola*, attached to Motion as Exhibit C, at 61:21-62:18.

Farinola appears to opine in his report that it is not enough that Otis failed to observe actual misleveling; rather, Otis should have checked all the elevator mechanisms that controlled leveling with the required frequency. This would seem to create a genuine dispute as to an issue of material fact. Otis argues that Farinola's opinions are "unreliable, speculative, and not 'generally accepted'." *Memorandum in Support of Motion* at 5, *citing Daubert v. v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, (1993). However, this Court views the evidence in the light most favorable to Proite. *Anderson v. Liberty Lobby*, *supra*. It is not, therefore, clear that summary judgment is appropriate at this time.

Otis argues that "Farinola's opinion included no analysis or means of scientific proof, and therefore will be inadmissible." *Id*., *citing Daubert*. It cites *Robinson v. Hartzell Propeller, Inc.*, 326 F. Supp.2d 631, 645 (E.D. Pa. 2004), for the principle that courts may only consider evidence that is "capable of being admissible at trial." *Robinson*, however, dealt with a document which lacked a proper foundation for admissibility at the time it was submitted in response to the motion for summary judgment. *Id*. at 654 at n. 10. The court found it could nevertheless be considered, because a foundation for its admission could be provided later. Whether Farinola's report will be admissible at trial under *Daubert* is a much more complicated inquiry.

It is apparent that this motion for summary judgment is essentially wrapped around a *Daubert* issue. The reliability of Farinola's methodology must be tested before it can be known whether the report is admissible. If his expert report is admissible under *Daubert*, summary judgment would not be appropriate. If it fails the *Daubert* test, however, it seems likely that Otis will ultimately be entitled to summary judgment. In *Pyle*, cited above, a well-reasoned opinion which was affirmed by the Court of Appeals for the Third Circuit, the Honorable Elizabeth Hey granted summary judgment in an elevator misleveling case where the plaintiff sought to prove negligence without obtaining expert evidence.

However, factors which distinguish *Pyle* from this case suggest that it would be imprudent to grant summary judgment in favor of Otis at this time. Proite, unlike the *Pyle* plaintiff, has an expert report. Where the report has not been shown to fail the *Daubert* test, Proite can be said to have met her burden of showing the existence of material issues of fact where the *Pyle* plaintiff did not. Therefore, it is important to ensure that both parties have a full opportunity to argue under *Daubert*.

The *Pyle* court, moreover, decided that negligent elevator misleveling could not be shown by *res ipsa loquitur*[1] because misleveling can occur in the absence of negligence. 2020 WL 3265163 at **5-6, *citing Laysears v. Schindler Elevator Corp.*, Civ. A. No. 94-3152, 1995 WL 568480 at *1 (E.D. Pa. Sep. 27, 1995) and *Micciche v Eastern Elevator Co.*, 645 A.2d 278 (Pa. Super. 1994).

---

[1] The doctrine of *res ipsa loquitur* provides that a plaintiff may show negligence by proving that he has been injured by an incident of a sort that normally does not occur in the absence of negligence. *Pyle, supra*, at 2020 WL 3265163 at *4, *citing Chapman v. Chaon*, 619 F3d. App'x 185, 187 (3d Cir. 2015).

Although Proite has not sought to employ the doctrine of *res ipsa loquitur*, the issue of whether elevator misleveling can occur in the absence of negligence is clearly relevant to Farinola's opinion that an elevator "should not mislevel under normal preventative maintenance." However, the Court needs to see evidence before it can decide whether this is or is not generally accepted by experts in this field. It cannot simply rely on the decisions of other judges who have seen such evidence. *See Laysears v. Schindler Elevator Corp.*, *supra* at *4 (experts retained by both sides testified that the mere existence of "elevator misleveling does not demonstrate that the maintenance company was negligent"). Unlike in *Pyle*, the issue did not arise here as part of a *res ipsa loquitur* argument, it has not therefore been discussed by the parties. It is preferable that it be addressed fully in a *Daubert* motion.

Accordingly, Proite, in relying upon the report of an apparently qualified expert, has done enough to show the existence of genuine issues of material fact which preclude the entry of summary judgment. For that reason, Otis's motion will be denied. It is evident, however, that the result of a future motion could be different, depending on the outcome of any *Daubert* motion challenging Farinola's report.

IV.   *Conclusion*

For the reasons set forth above, Otis's Motion for Summary Judgment will be denied.


BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE